1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**
9                    **CENTRAL DISTRICT OF CALIFORNIA**
10
11  LISA MARIE JOHNSON,              )    NO. CV 09-5865 SS
12               Plaintiff,          )
                                     )
13          v.                       )    **MEMORANDUM DECISION AND ORDER**
                                     )
14  MICHAEL J. ASTRUE,               )
    Commissioner of the Social      )
15  Security Administration,         )
                                     )
16               Defendant.          )
17  ─────────────────────────────── )
18                         **INTRODUCTION**
19
20       Plaintiff  Lisa  Marie  Johnson  ("Plaintiff")  brings  this  action
21  seeking  to  reverse  the  decision  of  the  Commissioner  of  the  Social
22  Security Administration (the "Commissioner" or the "Agency") for denying
23  her application for Social Security Disability Insurance ("SSDI") and
24  Supplemental Security Income ("SSI").  The parties consented, pursuant
25  to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United
26  States Magistrate Judge.  For the reasons stated below, the decision of
27  the Agency is REVERSED and REMANDED for further proceedings.
28

1
2

## PROCEDURAL HISTORY

3
4
5
6

   Plaintiff filed an application for SSDI and SSI on March 15, 2007
(Administrative Record ("AR") 82-84, 90-92).  She alleged a disability
onset date of January 16, 2007, (AR 82, 90), due to chronic high blood
pressure, arthritis, and asthma.  (AR 110).

7

8
9
10
11
12
13
14
15

   The Agency denied Plaintiff's claim for SSDI and SSI benefits
initially on June 18, 2007.  (AR 33-37).  This denial was upheld upon
reconsideration on October 9, 2007.  (AR 39-43).  Plaintiff then
requested a hearing, which was held before Administrative Law Judge
("ALJ") Robert A. Evans.  (AR 18).  On November 25, 2008, the ALJ
conducted a hearing to review Plaintiff's claim.  (AR 16-28).  The
Plaintiff appeared with counsel and testified.  (Id.).  Vocational
expert ("VE"), Howard J. Goldfarb, also testified.  (Id.).

16

17
18
19
20
21

   The ALJ denied benefits on March 16, 2009.  (AR 5-15).  Plaintiff
sought review of the ALJ's decision before the Appeals Council, which
denied her request on June 26, 2009.  (AR 1-4).  The ALJ's decision
therefore became the final decision of the Commissioner.  (Id.).
Plaintiff commenced the instant action on August 25, 2009.

22
23

## THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

24

25
26

   To qualify for disability benefits, a claimant must demonstrate a
medically determinable physical or mental impairment that prevents him

27
28

2

1  from engaging in substantial gainful activity[1] and that is expected to
2  result in death or to last for a continuous period of at least twelve
3  months.  Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing
4  42 U.S.C. § 423(d)(1)(A)).  The impairment must render the claimant
5  incapable of performing the work he previously performed and incapable
6  of performing any other substantial gainful employment that exists in
7  the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir.
8  1999) (citing 42 U.S.C. § 423(d)(2)(A)).

10     To decide if a claimant is entitled to benefits, an ALJ conducts
11  a five-step inquiry.  20 C.F.R. § 416.920.  The steps are:

13  (1)  Is the claimant presently engaged in substantial gainful
14       activity?  If so, the claimant is found not disabled.
15       If not, proceed to step two.
16  (2)  Is the claimant's impairment severe?  If not, the
17       claimant is found not disabled.  If so, proceed to step
18       three.
19  (3)  Does the claimant's impairment meet or equal the
20       requirements of any impairment listed at 20 C.F.R. Part
21       404, Subpart P, Appendix 1?  If so, the claimant is
22       found disabled.  If not, proceed to step four.
23  (4)  Is the claimant capable of performing his past work?  If
24       so, the claimant is found not disabled.  If not, proceed
25       to step five.

26  [1]  Substantial gainful activity means work that involves doing
27  significant and productive physical or mental duties and is done for pay
28  or profit.  20 C.F.R. § 416.910.

3

1      (5)   Is the claimant able to do any other work?  If not, the
2              claimant is found disabled.  If so, the claimant is
3              found not disabled.

4

5  Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d
6  949, 953-54 (9th Cir. 2001); 20 C.F.R. § 416.920(b)-(g)(1).

7

8     The claimant has the burden of proof at steps one through four, and
9  the Commissioner has the burden of proof at step five.  Bustamante, 262
10  F.3d at 953-54.  If, at step four, the claimant meets his burden of
11  establishing an inability to perform the past work, the Commissioner
12  must show that the claimant can perform some other work that exists in
13  "significant numbers" in the national economy, taking into account the
14  claimant's residual functional capacity ("RFC"),[2] age, education and
15  work experience.  Tackett, 180 F.3d at 1100; 20 C.F.R. § 416.920(g)(1).
16  The Commissioner may do so by the testimony of a vocational expert or
17  by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R.
18  Part 404, Subpart P, Appendix 2 (commonly known as "the Grids").
19  Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).  When a
20  claimant has both exertional (strength-related) and nonexertional
21  limitations, the Grids are inapplicable and the ALJ must take the
22  testimony of a vocational expert.  Moore v. Apfel, 216 F.3d 864, 869
23  (9th Cir. 2000).

24

25

26      [2]   Residual functional capacity is "the most [one] can still do
27  despite [his] limitations" and represents an assessment "based on all
     the relevant evidence."  20 C.F.R. § 416.945(a).
28

1
2

**THE ALJ'S DECISION**

3       The ALJ employed the five-step sequential evaluation process and
4  concluded that Plaintiff was not disabled within the meaning of the
5  Social Security Act.  (AR 14-15).  At the first step, the ALJ asserted
6  that Plaintiff had not engaged in substantial gainful activity since
7  January 16, 2007.  (AR 10).

8

9       At step two, the ALJ found that Plaintiff had the following severe
10 impairments, "peroneal neuropathy of the right lower extremity, mild
11 bilateral carpal tunnel syndrome, arthritis of the lumbar spine, and
12 asthma."  (AR 10).

13

14      At step three, the ALJ concluded that Plaintiff "does not have an
15 impairment or combination of impairments that meets or medically equals
16 one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix
17 1."  (AR 10).

18

19      At step four, the ALJ concluded that based on the entire record,
20 he found Plaintiff had the RFC to perform "sedentary work with no
21 ladder/rope/scaffold climbing, occasional postural activity, and no
22 concentrated exposure to fumes, smoke, etc."  (AR 11).

23

24      Finally, at step five, the ALJ concluded that, based on Plaintiff's
25 age, education, work experience, RFC and testimony of the VE, that
26 "there are jobs that exist in significant numbers in the national
27 economy that the claimant can perform." (AR 14).  Specifically, the ALJ
28

5

found that Plaintiff could work as a lens inserter. (Id.). Accordingly, the ALJ determined that Plaintiff was not disabled, as defined in the Social Security Act, at any time through the date of the decision. (Id.).

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720. It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21.

\\
\\

1

**DISCUSSION**

2

3      Plaintiff contends the ALJ erred for several reasons. (Plaintiff's
4   Memorandum with Points and Authorities in Support of Complaint ("PC")
5   at 1-13, Plaintiff's Reply Memorandum ("PRM") at 1-10). First, the ALJ
6   failed to properly consider Plaintiff's RFC. (PC at 5-10, PRM at 1-8).
7   Under this first issue, Plaintiff also contends that the ALJ failed to
8   properly consider Plaintiff's obesity. (Id.). Second, the ALJ failed
9   to properly consider Plaintiff's subjective symptoms. (PC at 10-11, PRM
10   at 8). Third, the ALJ improperly relied on the VE. (PC at 11-12, PRM
11   at 8-10).

12

13      The Court agrees with Plaintiff's first and second grounds for
14   remand. For the reasons discussed below, the Court finds that the ALJ's
15   decision should be reversed and this action remanded for further
16   proceedings.

17

18      Plaintiff's remaining contention that the ALJ improperly relied on
19   the VE implicates the need for full and fair consideration of a re-
20   evaluation of Plaintiff's RFC, obesity, and subjective complaints
21   testimony, for which this case is being remanded. Analysis of this
22   matter is necessarily linked to the issues discussed below.
23   Accordingly, this Court need not reach Plaintiff's remaining contention.

24

25

26

27

28

## A.    The ALJ Failed To Properly Determine Plaintiff's RFC

Plaintiff contends that the ALJ's determination that she could perform sedentary work with restrictions is erroneous for a number of reasons.  (PC at 5-10, at PRM 1-7).  Plaintiff's main contention is that the opinions of consultative examiner ("CE"), Dr. Shahrzad Sodagar-Marvasti ("Dr. Sodagar-Marvasti"), and the Disability Determination Service ("DDS") medical consultants do not constitute substantial evidence because they did not consider limitations and symptoms Plaintiff suffered subsequent to their assessment of her.  (PC at 5-7, PRM at 1-7).  Thus, Plaintiff suggests that the ALJ's reliance on these opinions when assessing his disability determination was error.  (AR 13).  The Court agrees.

"A claimant's residual functional capacity is what he can still do despite his physical, mental, nonexertional, and other limitations." Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989) (citing 20 C.F.R. § 404.1545).  An RFC assessment requires the ALJ to consider a claimant's impairments and any related symptoms that may "cause physical and mental limitations that affect what [he] can do in a work setting." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  In determining a claimant's RFC, the ALJ considers all relevant evidence, including residual functional capacity assessments made by consultative examiners, State Agency physicians and medical experts.  20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).  See also 20 C.F.R. §§ 404.1513(c), 416.913(c).  If a physician's RFC assessment is not contradicted by another physician, the ALJ must provide clear and convincing reasons for rejecting that opinion.    Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (as

1  amended) ("[T]he Commissioner must provide 'clear and convincing'
2  reasons for rejecting the uncontradicted opinion of an examining
3  physician.") (citing Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir.
4  1990)).

5

6      Defendant argues that the record was sufficient in this case for
7  the ALJ to determine that Plaintiff retained the RFC to perform
8  sedentary work with restrictions. (Memorandum in Support of Defendant's
9  Answer ("DA") at 2). Specifically, Defendant asserts that the ALJ's
10 determination is supported by substantial evidence because he primarily
11 relied on the opinion of consultative examiner, Dr. Sodagar-Marvasti,
12 whose opinion is based on independent clinical findings. (Id.).
13 However, Dr. Sodagar-Marvasti examined Plaintiff on only one occasion
14 on May 19, 2007, and prior to the additional impairments Plaintiff was
15 diagnosed with including right peroneal neuropathy and mild carpal
16 tunnel syndrome. (AR 167-71).

17

18     Only a month later on June 18, 2007, medical consultant P. E.
19 Boetcher, M.D., ("Dr. Boetcher"), reviewed Plaintiff's medical records
20 for the DDS and issued a Physical Residual Functional Capacity
21 Assessment for a range of light exertion work. (AR 172-79). On October
22 9, 2007, Frank W. Wilson, M.D., ("Dr. Wilson), another DDS medical
23 consultant, affirmed Dr. Boetcher's RFC of Plaintiff. (AR 205-06).

24

25     It was not until several months later, on April 23, 2008, Pierre
26 Hendricks, M.D., ("Dr. Hendricks"), an orthopedic surgeon, found that
27 Plaintiff suffered from "back, right hip, right knee, and right lower
28 extremity pain of uncertain etiology." (AR 229). Because Dr. Hendricks

9

1 did not know the etiology of Plaintiff's pain, he referred Plaintiff to
2 Kalpana Ravikumar, M.D. ("Dr. Ravikumar"), (Id.), who in August 2008,
3 after an EMG and nerve conduction velocity testing, diagnosed Plaintiff
4 with right peroneal neuropathy, as well as mild right and left carpal
5 tunnel syndrome.   (AR 216-21).

7    Neither the CE nor the DDS medical consultants had the opportunity
8 to review and consider these significant limitations before giving their
9 opinions.   The CE and medical consultants could very well have changed
10 their opinions regarding their RFC assessment if they had known about
11 these additional impairments.   Therefore, their opinions could not have
12 provided substantial evidence to support the ALJ's decision.

14    Although   the   ALJ   himself   considered   Plaintiff's   peroneal
15 neuropathy[3] and carpal tunnel[4] impairments in his RFC determination, the
16 ALJ is not a qualified expert and cannot make his own medical assessment
17 as to Plaintiff's physical condition.   See Day v. Weinberger, 522 F.2d
18 1154, 1156 (9th Cir. 1975).   Rejecting Plaintiff's medical records
19 concerning these impairments on a limited review of the evidence cannot

20  [3] The ALJ stated, "given the claimant's peroneal neuropathy of the
21 right lower extremity, however, the undersigned gives greater weight to
the assessment from the internist consultative examiner limiting the
22 claimant to sedentary work than the assessment from the Disability
Determination Services medical consultants allowing for a range of light
23 exertion work."   (AR 12).

24  [4]  The ALJ stated, "the consultative examination showed normal
25 range of motion of the shoulders, elbows and wrists and no neurological
deficits.   The nerve conduction study of the upper extremities was
26 consistent with bilateral carpal tunnel syndrome, but only mild in
severity.   The records from Dr. Hendricks do not show any neurological
27 deficits of the upper extremities.   Therefore, the undersigned finds
28 that the claimant's mild bilateral carpal tunnel syndrome does not
prevent her from performing sedentary work."   (AR 12).

10

be sustained. The Court cannot affirm the ALJ's "conclusion simply by isolating a specific quantum of supporting evidence." Day, 522 F.2d at 1156.

The ALJ also has an affirmative duty to fully and fairly develop the record in a social security case, even if the claimant was represented by counsel. Tonapetyan, 242 F.3d at 1150. Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry or gather additional information. Id. Here, once the ALJ knew about Plaintiff's additional diagnoses, he should have developed the record.

Because the ALJ relied so heavily on the CE and DDS medical consultants opinions in determining Plaintiff's RFC, the ALJ failed to properly assess Plaintiff's RFC. Thus, remand is appropriate. Upon remand, the ALJ may wish to either obtain the services of another CE who has reviewed all of Plaintiff's impairments or obtain testimony from a medical expert regarding the same.

### 1. The ALJ Failed To Properly Consider Plaintiff's Obesity

Plaintiff argues that the ALJ failed to address the effect of Plaintiff's obesity in combination with Plaintiff's other impairments. (PC at 9). The Court agrees.

11

1  Obesity is no longer a listed impairment, nor was it at the time
2  of the ALJ's decision.  See Revised Medical Criteria for Determination
3  of a Disability, Endocrine System and Related Criteria, 64 F.R. 46122
4  (1999) (effective October 25, 1999) ("We are deleting listing 9.09,
5  "Obesity," from appendix 1, subpart P of part 404, the "Listing of
6  Impairments" (the listings).").  However, an ALJ must still determine
7  the effect of obesity upon a claimant's other impairments and its effect
8  on her ability to work and general health.  Celaya v. Halter, 332 F.3d
9  1177, 1182 (9th Cir. 2003).  Social Security Ruling 02-01p[5] states that
10 adjudicators must consider obesity in all steps of the sequential
11 evaluation process and in combination with other impairments.

13  The record contained several references or inferences to
14 Plaintiff's obesity.  (AR 167, 168, 170, 198, 202, 221, 229).
15 Notwithstanding this evidence of obesity, the ALJ did not analyze the
16 effect of Plaintiff's obesity on Plaintiff's other impairments.  (AR
17 12).  The ALJ did note that Plaintiff was obese and that her obesity
18 must be considered along with her other impairments.  (Id.).  However,
19 in a conclusory fashion, the ALJ stated that "there [wa]s no evidence
20 that the claimant's obesity cause[d] any functional impairment."  (Id.).
21 This terse statement does not satisfy the standard.  Celaya, 332 F.3d
22 at 1182; see also Barrett v. Barnhart, 355 F.3d 1065, 1068-69 (7th Cir.
23 2004) (ALJ erred in not considering effect of Plaintiff's obesity on
24 claimant's arthritis); Clifford v. Apfel, 227 F.3d 863, 873 (7th Cir.
25 2000) (evidence of obesity required ALJ to consider weight issue with

26  [5]  Social Security Ruling 02-1p, Evaluation of Obesity, was
27 published in the Federal Register on September 12, 2002.  That ruling
   superseded the Commissioner's previous ruling regarding the evaluation
28 of obesity, Social Security Ruling 00-3p, first published on May 15,
   2000.

12

1 the aggregate effect of claimant's other impairments).  Because the ALJ
2 is required to adequately explain his evaluation and the combined effect
3 of a claimant's impairments, the ALJ's passing reference of Plaintiff's
4 obesity falls far short of weighing the effect of that obesity on
5 Plaintiff's severe impairments.  <u>Barrett</u>, 355 F.3d 1068-69).  On remand,
6 the ALJ shall consider the effect of obesity upon a Plaintiff's other
7 impairments and its effect on her ability to work and general health.

8

9 **B.    The ALJ Failed To Properly Consider Plaintiff's Subjective**
10 **Symptoms**

11

12     Plaintiff contends that the ALJ failed to articulate clear and
13 convincing reasons for rejecting her subjective complaints testimony.
14 (PC at 4-8).  The Court agrees.

15

16     The ALJ may reject a plaintiff's testimony if he or she makes an
17 explicit credibility finding that is "supported by a specific, cogent
18 reason for the disbelief."  <u>Rashad v. Sullivan</u>, 903 F.2d 1229, 1231 (9th
19 Cir. 1990) (internal citations omitted).  Unless there is affirmative
20 evidence showing that the plaintiff is malingering, the ALJ's reasons
21 for rejecting the plaintiff's testimony must be "clear and convincing."
22 <u>Lester</u>, 81 F.3d at 834.  Moreover, the ALJ may not discredit a
23 claimant's testimony of pain and deny disability benefits solely because
24 the degree of pain alleged by the claimant is not supported by objective
25 medical evidence. <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 346-47 (9th Cir.
26 1991).  The ALJ attempts to discount Plaintiff's subjective complaints
27 testimony by finding that Plaintiff's symptoms were inconsistent with
28 her RFC and medical treatment.  (AR 13).

### 1.   RFC/Objective Medical Evidence

The ALJ, in a conclusory fashion, stated that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms [we]re not credible to the extent they [we]re inconsistent with the [] residual functional capacity assessment." (AR 13). Because the ALJ relied so heavily on the CE and DDS medical consultants in determining his RFC assessment of Plaintiff, and because the ALJ did not properly determine Plaintiff's RFC, it was not a clear and convincing reason to reject her testimony based upon its inconsistency with the RFC. (AR 11-13). Furthermore, even if Plaintiff's medical records did not support the extent of her subjective symptoms testimony, this fact, by itself, would not be sufficient for the ALJ to reject her testimony. See Lester, 81 F.3d at 834 ("Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence.").

### 2.   Plaintiff's Lack Of Treatment

The ALJ also found that "claimant's subjective complaints and alleged limitations [we]re not consistent with the treatment she receive[d]." (AR 13). The ALJ specifically noted Plaintiff's lack of treatment for her back pain and asthma, and the absence of a brace or walker. (Id.).

14

1   First, the ALJ noted that "claimant had not received any ongoing
2   treatment for her back pain." (AR 13). However, there is evidence to
3   support the contrary. (AR 218-21, 228-29). On April 23, 2008,
4   Plaintiff sought treatment with Dr. Hendricks. (Id.). Plaintiff
5   reported to him that she had suffered back and neck pain and was treated
6   by her previous physician, Dr. Fernandez with anti-inflammatory
7   medication but without benefit. (AR 228). Plaintiff then indicated
8   that she also sought treatment at Molina Medical Center for her pain
9   where she was prescribed anti-inflammatory medication and Vicodin, and
10  placed in physical therapy. (Id.). After evaluating Plaintiff, Dr.
11  Hendricks diagnosed her with "back, right hip, right knee, and right
12  lower extremity pain of uncertain etiology." (AR 229). However,
13  because he was uncertain of the etiology of her pain, Dr. Hendricks
14  referred Plaintiff to Dr. Ravikumar for an MRI of her lumbar spine and
15  right hip. (Id.).

16

17  On August 13, 2008 and August 19, 2008, Plaintiff saw Dr. Ravikumar
18  for her lower back pain. (AR 218-21). Dr. Ravikumar performed an EMG
19  and nerve conduction velocity testing on Plaintiff's upper and lower
20  extremities, and diagnosed Plaintiff with right peroneal neuropathy and
21  carpal tunnel syndrome. (Id.). Dr. Ravikumar then recommended that
22  Plaintiff begin a physical therapy plan. (Id.). Thus, medical records
23  support Plaintiff's multiple attempts to seek treatment in an effort to
24  obtain relief from her back pain. Accordingly, this was not a
25  legitimate reason to reject her subjective testimony.

26

27  Next, the ALJ found that Plaintiff's complaint of asthma was not
28  consistent with the treatment she received. (AR 13). Specifically, the

15

ALJ stated that "[Plaintiff] ha[d] not required emergency room treatment or hospitalization for asthma." (Id.). Again, the ALJ's finding is not supported by the record. In fact, Plaintiff had required emergency room treatment due to an asthma attack.[6] (AR 167).

Finally, the ALJ noted that "the record does not show that the claimant was prescribed a brace or walker in order to allow her to stand." (AR 13). However, on Dr. Hendricks August 6, 2008 treatment notes, he observed that Plaintiff was "unable to walk without a cane." (AR 227). He further noted that a request for a walker due to Plaintiff's lower extremity weakness was "not unreasonable." (Id.). Additionally, at the hearing, the ALJ specifically questioned Plaintiff regarding the brace on her right leg. (AR 21). Plaintiff responded that the brace was used for stability to support her leg and knee. (Id.). The ALJ's conclusion that the record does not support Plaintiff's need of a brace or walker is contradicted by the record. Accordingly, several of the reasons given for rejecting Plaintiff's testimony are not clear and convincing reasons.

As there is no evidence to support a finding that Plaintiff was malingering (and the ALJ failed to expressly make such a finding), the ALJ was required to provide "clear and convincing" reasons to reject her testimony. The ALJ may consider the following factors when weighing the claimant's credibility: (1) her reputation for truthfulness; (2) inconsistencies either in her testimony or between her testimony and her

---

[6] Dr. Sodagar-Marvasti, noted on her consultative evaluation that "although [Plaintiff] gets asthma attacks[,] she does not go to the ER. [However] last year they had to call 911 for her and they took her to the emergency room because of her asthma attack." (AR 167).

16

1  conduct; (3) her daily activities; (4) her work record; and (5)
2  testimony from physicians and third parties concerning the nature,
3  severity, and effect of the symptoms of which she complains. <u>Thomas v.</u>
4  <u>Barnhart</u>, 278 F.3d 947, 958-59 (9th Cir. 2002). Upon remand,
5  reconsideration of Plaintiff's testimony is required.

7  **C.    <u>Remand Is Required To Remedy Defects In The ALJ's Decision</u>**

9       Remand for further proceedings is appropriate where additional
10  proceedings could remedy defects in the Commissioner's decision. <u>See</u>
11  <u>Harman v. Apfel</u>, 211 F.3d 1172, 1179 (9th Cir.), <u>cert. denied</u>, 531 U.S.
12  1038, 121 S. Ct. 628, 148 L. Ed. 2d 537 (2000); <u>Kail v. Heckler</u>, 722
13  F.2d 1496, 1497 (9th Cir. 1984).

15                              **CONCLUSION**

17       Consistent with the foregoing, IT IS ORDERED that judgment be
18  entered REVERSING the decision of the Commissioner and REMANDING this
19  matter for further proceedings consistent with this decision. IT IS
20  FURTHER ORDERED that the Clerk of the Court serve copies of this Order
21  and the Judgment on counsel for both parties.

22  DATED: May 6, 2010
23

24                              _____/S/_____
                                SUZANNE H. SEGAL
25                              UNITED STATES MAGISTRATE JUDGE

26
27
28

                                  17